IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ELLA C. KING,
    Plaintiff,

vs.                                  Case No. 5:07cv84/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
    Defendant.
_____/

### REPORT AND RECOMMENDATION

       This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

       Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.       PROCEDURAL HISTORY

       Plaintiff protectively filed an application for SSI on October 24, 2003 (Tr. 72–75).[1]  Her application was denied initially (Tr. 26–28, 31–33) and upon reconsideration (Tr. 29–30, 36–38).

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on August 3, 2007 (Doc. 13).

On August 1, 2006, following a hearing, an administrative law judge (ALJ) found that Plaintiff was not under a "disability" as defined in the Act at any time through August 1, 2006, the date of his decision (Tr. 14–24). On March 2, 2007, the Appeals Council denied Plaintiff's request for review (Tr. 6–9). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

II.   FINDINGS OF THE ALJ

On August 1, 2006, the ALJ made several findings relative to the issues raised in this appeal (Tr. 17–24):

1) Plaintiff has not engaged in substantial gainful activity (SGA) since she filed her application for SSI.

2) The medical evidence establishes that Plaintiff has impairments which are considered "severe" within the regulatory definition.

3) Plaintiff's allegations are not totally credible or supported by the medical evidence.

4) Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 16.

5) Plaintiff has no past relevant work.

6) Plaintiff has the residual functional capacity (RFC) to perform a restricted range of light work (20 C.F.R. § 416.967).

7) Plaintiff is 51 years old (closely approaching advanced age) (20 C.F.R. § 416.963).

8) Plaintiff has a limited education (20 C.F.R. § 416.964).

9) Plaintiff has not established the acquisition of transferable skills in the performance of her past work.

10) If Plaintiff could perform the full range of light work, Section 416.969 of Regulations No. 16, and Rule 202.17, Table No. 2 of Appendix 2, Subpart P, Regulations No. 16, would direct a conclusion that, considering Plaintiff's RFC, age, education, and work experience, she is not disabled.

11) Within the framework of Rule 202.17 and the testimony of the vocational expert, there is substantial competent evidence of jobs that exist in significant numbers that Plaintiff could perform.

12) Plaintiff was not under a "disability," as defined in the Act, at any time through August 1, 2006 (20 C.F.R. § 416.920(f)).

### III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[2] the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing SGA, she is not disabled.

2. If the claimant is not performing SGA, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing SGA and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions

then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY

   A.   Personal History[3]

Plaintiff testified at her hearing that she is fifty-one years old with a sixth grade education. She indicated that she quit school at the age of fifteen, got married, and started to raise a family. She noted that she had failed several grades but nevertheless was able to do simple reading and mathematics, and she demonstrated that ability at the hearing. Plaintiff is not illiterate, as defined in the Regulations, and she can communicate in English.

Plaintiff described her work history by indicating that she has never worked full time on a sustained basis; all she has ever done is seasonal agricultural labor type of work, such as picking peas and blueberries (Tr. 407). Her earnings record is consistent with that testimony, and as a whole, the record establishes that she has no past relevant work as that term is defined in the Regulations.

Plaintiff was asked to describe her disability, and she indicated that her biggest problem was with her breathing. Specifically, she noted that she "can't breathe good enough to hold down a job" (*id.*). She stated that she has been assessed with COPD (Chronic Obstuctive Pulmonary Disease) and emphysema. She is medicated for the conditions, and she stated that she must use supplemental oxygen when she goes out in hot weather. She also stated that she uses her inhaler nine to twelve times a day, but she is a smoker and still smokes cigarettes despite her serious breathing problems. She also takes Advair and Spiriva (Tr. 411).

Plaintiff described back pain that goes down her spine and runs down the left side of her buttocks to her left leg. She stated that her back is sore all the time. She testified that she has been suffering from back problems since 1986 (Tr. 413). She also testified that she has been told by doctors that the pain is from arthritis. She takes Lortab 7.5 mg for the pain, which helps "some" (Tr. 414). She also claimed to have arthritis in the neck and that this caused pain and limitations in the use of her hands and arms.

---

[3]Unless otherwise noted, the information in this section is derived from the opinion of the ALJ (Tr. 19–20).

Plaintiff related a rather extensive list of activities of daily living, indicating that she will do things like shop and drive a car. She watches television, walks around her yard, and goes fishing twice a month, fishing off of a dock. Plaintiff also does some cooking, mostly in a microwave oven, and does some laundry. She testified that she could sweep half of a room at a time (Tr. 419), walk about fifty yards (Tr. 423), and pick up her sister's dog, which weighs about eight or nine pounds (Tr. 422). She has no problems sleeping with her medication.

Plaintiff also claimed to have anxiety and noted that she did not like to be around people. She has sought some treatment at the "C.O.P.E. Center" (*see, e.g.*, Tr. 187–90), but she still does not like to be around even her family members. Additionally, Plaintiff explained that her medication helps her quite a bit in that she is not as angry as she was and that she is not as depressed as she was when she was without the medication.

B.    Relevant Medical History — Physical[4]

Plaintiff has been assessed with COPD, and the objective medical findings include the discovery of blebs in Plaintiff's lung consistent with emphysema (Tr. 298). Her complaints of chest pain and shortness of breath are documented (Tr. 309).

On February 4, 2004, Kris Lewandowski, M.D., examined Plaintiff at the request of the State Disability Determination Services (DDS) (Tr. 202–05). Plaintiff reported pain in her back, elbows, wrists, and hands, and she rated her back pain as a 10 on a 10-point scale (Tr. 202). She also reported decreased hearing, poor eyesight, shortness of breath, chest tightness, depression, and chronic stomach aches (*id.*). She indicated that she used inhalers, which helped her asthma, and she smoked one package of cigarettes a day (*id.*). She denied any alcohol or drug abuse (*id.*). She indicated she had no regular doctors and took no medications on a regular basis (Tr. 203). Upon examination, Plaintiff was alert, oriented, and cooperative, and she had good communication skills (Tr. 202). Her visual acuity was 20/50 on the right eye and 20/30 on the left eye (Tr. 203). She had

---

[4] The court notes that the record contains evidence of Plaintiff's mental impairments, but Plaintiff has raised no issue in the instant appeal regarding the ALJ's consideration of her mental impairments. Thus, the summary of Plaintiff's medical history does not include any evidence regarding her mental impairments unless relevant to the issues in this case. Additionally, unless otherwise indicated, the medical summary in this section is derived from the summary provided in the memorandum in opposition filed by Defendant (Doc. 16).

normal muscle size and strength, with a normal range of motion in all extremities (*id.*). She could walk and sit without difficulty (Tr. 202). A neurological examination indicated normal reflexes and sensation to touch (Tr. 203). Plaintiff could bend backward to 90 degrees, and she could walk on her heels and toes (*id.*). She had good balance, grip strength, and manual dexterity (*id.*). Dr. Lewandowski noted that Plaintiff appeared comfortable during the evaluation, and she changed positions without difficulty (*id.*). Dr. Lewandowski also noted no significant abnormalities of the musculoskeletal system and no signs of cardiopulmonary disease (*id.*). Plaintiff was able to ambulate without an assistive device, and she appeared to have no memory problems (*id.*). Dr. Lewandowski opined that "without additional testing it is difficult to judge if this patient has real problems" (*id.*).

Plaintiff reported to the emergency room on May 9, 2004 (Tr. 236–48). She complained of chest pain and shortness of breath (Tr. 246). She rated her pain as an 8 out of 10 (Tr. 244). She reported a history of back pain and arthritis (Tr. 246). The examining physician's diagnosis was acute bronchitis, COPD, tobacco abuse, and osteoarthritis (*id.*). Plaintiff received medications and was advised to follow up with her regular physician (*id.*).

Plaintiff presented to James Howell, D.O., with complaints of bilateral ear pain on August 10, 2004 (Tr. 321–22). A physical examination was within normal limits (Tr. 321–22). Dr. Howell prescribed medication for an ear infection and recommended a follow-up visit in a month (Tr. 322).

Plaintiff returned to Dr. Howell's office two weeks later (Tr. 319–20). She reported a history of asthma and stated that she struggled to breathe daily (Tr. 319). Plaintiff appeared frail, but her physical examination was within normal limits and unchanged (Tr. 320). Dr. Howell's assessment was anxiety/depression, COPD with heavy bronchitis, and GERD (Gastroesophageal Reflux Disease) (*id.*). Plaintiff received sample medications (*id.*).

Plaintiff saw Dr. Howell again the following week with complaints of back pain (Tr. 317–18). She reported that she hurt her back several years ago (Tr. 317). Her physical examination was unchanged (Tr. 317–18). Dr. Howell's assessment was GERD, COPD, and "smoker" (Tr. 318). Dr. Howell emphasized to Plaintiff that she must stop smoking, and his records reflect the following notation: "EDUCATION: Stop Smoking!" (*id.*).

Plaintiff presented to Dr. Howell for a follow-up on September 14, 2004 (Tr. 315–16). She reported pain in her left elbow (Tr. 315). A physical examination was within normal limits (Tr. 315–16). Dr. Howell's assessment was asthma and COPD (Tr. 316).

Plaintiff presented to Dr. Howell for medication refills on October 22, 2004 (Tr. 313). She complained of a cough, headache, ear pain, nausea, and diarrhea (Tr. 313). Dr. Howell's assessment was degenerative joint disease, abdominal pain, asthmatic bronchitis, anxiety/depression, "COPD in smoker," and a history of coronary artery disease (Tr. 314). Plaintiff received sample medications, but she refused labs, x-rays, and a computed tomography (CT) scan (*id.*). Dr. Howell again advised Plaintiff to stop smoking (*id.*).

Plaintiff returned to Dr. Howell's office one week later (Tr. 311–12). She reported feeling better, and she said she was "raking yards" (Tr. 311). Upon examination, Plaintiff appeared older than her stated age, but her physical examination was unchanged (Tr. 311–12). Dr. Howell's assessment was COPD and bronchitis (Tr. 312). Dr. Howell recommended that Plaintiff reduce her exposure to respiratory irritants (*id.*).

On November 22, 2004, Plaintiff reported to Dr. Howell's office with complaints of shortness of breath, lung pain, cough, and congestion (Tr. 309–10). She indicated that she was still smoking one or two packages of cigarettes a day (Tr. 309). Dr. Howell's assessment was AECB (acute exacerbation of chronic bronchitis), COPD, tobacco abuse, and polyarthritis (Tr. 310). Dr. Howell advised Plaintiff to stop smoking and return with any changes (*id.*).

Plaintiff visited Dr. Howell's office on December 15, 2004, with complaints of pain in her right shoulder, arm, and leg (Tr. 306–08). She reported that she had fallen while unloading groceries (Tr. 307). A physical examination indicated a decreased range of motion in her right shoulder, hip, and foot (Tr. 307). A hip x-ray indicated no fracture or dislocation (Tr. 306). Plaintiff refused to undergo a CT scan to rule out a fracture of the hip (Tr. 308). Dr. Howell's assessment was right hip and shoulder strain and a possible right hip fracture (*id.*).

Plaintiff returned to Dr. Howell's office on January 21, 2005 (Tr. 302–03). She reported ear pain, swollen tonsils, headache, and nausea (Tr. 302). Dr. Howell indicated that Plaintiff needed a full work-up, but she refused one due to cost (Tr. 303). Dr. Howell's assessment was COPD,

Case 5:07-cv-00084-RS-EMT   Document 18   Filed 04/10/08   Page 9 of 18

Page 9 of 18

smoker; chronic headaches; and chronic dyspepsia (*id.*). Dr. Howell advised Plaintiff to rest, and he recommended good nutrition (*id.*).

Plaintiff reported to an emergency room on January 31, 2005, with complaints of chest pain with tightness and soreness (Tr. 323–30). She also reported nausea, dizziness, earache, headache, trouble breathing, and cough (Tr. 324, 327). Upon examination, Plaintiff had decreased air movement throughout her chest (Tr. 325). A chest x-ray indicated osteopenic bone and minimal patchy stranding density in the right apex, representing scarring (Tr. 329). The examining physician's impression was bronchitis — acute asthmatic (Tr. 325). The examining physician recommended follow-up with Dr. Howell in two to seven days (Tr. 326).

Plaintiff returned to Dr. Howell on February 9, 2005 (Tr. 298–301). She reported headaches, shortness of breath, and pain with a deep breath (Tr. 300). A chest x-ray indicated COPD with round blister-like formations and scoliosis in the thoracic spine (Tr. 298). Dr. Howell's assessment was a history of recent pneumonia and smoker with COPD (Tr. 301). He gave Plaintiff sample medications and again advised her to stop smoking (*id.*).

Plaintiff visited Dr. Howell's office for medication refills in February and March 2005 (Tr. 293–94, 296–97). She reported cough, headache, ear pain, dizziness, shortness of breath, chest pain, and fatigue (Tr. 293, 296). Dr. Howell's assessment was chronic lower back pain, and COPD with continued tobacco use and no medication, with bronchitis (Tr. 294, 297). Dr. Howell advised Plaintiff to stop smoking (*id.*).

Plaintiff followed-up with Dr. Howell for medication refills in May, June, August, and September 2005 (Tr. 283–90). She indicated that she could not afford her medications (Tr. 283, 287, 289). She also reported that she smoked one pack of cigarettes per day (Tr. 283, 289). Dr. Howell's repeated assessment was polyarthritic pain, depression/anxiety, GERD, and COPD with tobacco use (Tr. 282, 284, 286, 290).

Plaintiff reported to Dr. Howell with complaints of shortness of breath and lung pain on October 14, 2005 (Tr. 278–90, 391–92). She stated that she was not taking her medications, although she was using an inhaler for her asthma (Tr. 279, 391). A chest x-ray indicated a stranding density on right second rib, osteopenic bones, mild degenerative changes in her spine, and a curvature of the thoracic spine (Tr. 278–80). Dr. Howell's assessment was AECB/COPD (Tr. 280,

392). A chest x-ray the following week revealed stranding density, which represented scarring (Tr. 277, 397). Dr. Howell recommended follow-up in three months (Tr. 277).

Plaintiff returned to see Dr. Howell on November 14, 2005, for medication refills (Tr. 389–90). She reported shortness of breath and cough (Tr. 389). Dr. Howell's impression was depression/anxiety, COPD — noncompliant with medications due to "no money," asthma, and GERD (Tr. 390).

Plaintiff returned to Dr. Howell for medication refills on December 14, 2005 and January 16, 2006 (Tr. 385–88). She reported complaints of dizziness, cough and congestion, vomiting, fever, and headache (Tr. 387). She also indicated that Advair helped her breathe better (Tr. 385). Dr. Howell's assessment was headaches, bronchitis/sinusitis, COPD, asthma, polyarthritis, and GERD (Tr. 386, 388).

Plaintiff saw Dr. Howell for medication refills three times in February and March 2006 (Tr. 377–78, 381–84). She reported that she still smoked (Tr. 381, 383), and that a house fire had destroyed her medications (Tr. 381). Dr. Howell's assessment was AECB with asthma and COPD, continued tobacco use, GERD — "noncompliant with lifestyle changes," polyarthritis, and anxiety/depression (Tr. 378, 382, 384). Dr. Howell advised Plaintiff to stop smoking (Tr. 378).

Finally, Plaintiff followed-up with Dr. Howell in April and May 2006 for medication refills (Tr. 374–75, 379–80). She complained of continued wheezing and acid reflux (Tr. 374). Dr. Howell's assessment was GERD, hyperlipidemia, COPD/asthma/tobacco use, and polyarthritis (Tr. 375, 380).

    C.    Other Information Within Plaintiff's Claim File

Two DDS physicians rendered opinions regarding Plaintiff's physical RFC. The first opined that Plaintiff could occasionally[5] lift and/or carry (including upward pulling) 50 pounds, frequently[6] lift and/or carry (including upward pulling) 25 pounds, and stand and/or walk and/or sit (with normal breaks) for about six hours in an eight-hour workday. Plaintiff also had the unlimited ability, subject

---

[5] "Occasionally" means occurring from very little up to $1/3^{rd}$ of an 8-hour workday (cumulative, not continuous).

[6] "Frequently" means occurring $1/3^{rd}$ to $2/3^{rds}$ of an an 8-hour workday (cumulative, not continuous).

to the above restrictions, to push and/or pull (including operation of hand and/or foot controls). Plaintiff had no postural limitations (i.e., in her ability to climb, balance, stoop, kneel, crouch or crawl), and no communicative, environmental, or manipulative limitations (i.e., to reach, handle, finger, or feel). However, Plaintiff had some visual limitations. *See* Tr. 206–13. The second agency physician reached similar conclusions, but found that Plaintiff was able to occasionally lift or carry only 20 pounds and frequently lift or carry only 10 pounds. *See* Tr. 267–74.

A vocational expert (VE) was called to testify at Plaintiff's hearing. After being duly sworn and qualified without objection, he testified that he had reviewed Plaintiff's work history, and he indicated that the record was sufficient for him to formulate an opinion.[7] The VE was then asked several hypothetical questions one of which asked him to assume an individual of Plaintiff's age, education, and lack of work experience, with the following physical RFC: ability to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours in an eight-hour workday, sit for six hours in an eight-hour workday, perform all postural activities and physical functions occasionally, and was limited in working around dust, fumes, and other airborne irritants. Given these assumptions, the vocational expert testified that Plaintiff could make an adjustment to light work as an assembler, representing 100,000 jobs nationally and 2,500 jobs in Florida; a hand packager, representing 200,000 jobs nationally and 7,000 jobs in Florida; and a fast food worker, representing 368,000 jobs nationally and 25,000 jobs in Florida (Tr. 22–23, 433–34). Another hypothetical question asked the VE to assume that Plaintiff's testimony was fully credible and 100% accurate. In response, the VE testified that there would be no jobs Plaintiff could perform (Tr. 435). When asked to explain what, specifically, would preclude Plaintiff from performing all work, the VE indicated that it was not any one thing; rather, it was the combination of Plaintiff's complaints, including shortness of breath, back pain, pain radiating from her back to the left elbow, elbow pain, shoulder pain, anxiety even in small groups, memory problems, and numbness in her hands and arms when they are at waist level for about fifteen minutes (*id.*).

---

[7]Because Plaintiff had no work history that would meet the definition of past relevant work found in the Regulations, the burden of proof shifts to the Commissioner to come forward with substantial competent evidence of jobs that exist in significant numbers Plaintiff would be expected to perform. *See* SSR 82–63.

V.   DISCUSSION

Plaintiff raises two issues on appeal. First, Plaintiff contends the ALJ misapplied the Eleventh Circuit pain standard (Doc. 15 at 1, 17–20). Next, Plaintiff asserts the ALJ improperly determined that Plaintiff's daily activities indicate that she has the capacity for competitive work (Doc. 15 at 2, 20–21).[8]

Plaintiff generally contends the ALJ erred in rejecting her testimony regarding soreness and pain in her side, buttocks, and left leg, as well as her testimony concerning her physical capacities, breathing difficulties, and persistent cough (Doc. 15 at 17–18).

As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Wilson v. Barnhart, 284 F.3d 1219 (11th Cir. 2002); Kelley v. Apfel, 173 F.3d 814 (11th Cir. 1999); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529 (or, similarly, § 416.929), because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." Wilson, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

---

[8]The undersigned will combine Plaintiff's arguments into one discussion, as they relate to each other.

But "[w]hile both the Regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. Id.; Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." MacGregor, 786 F.2d at 1054; Holt, 921 F.2d at 1223. "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted). The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[9] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all

---

[9] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." Hand, 761 F.2d at 1548–49. It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence." Arnold v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

In the instant case, initially, the ALJ specifically cited 20 C.F.R. § 416.929, demonstrating his recognition of the applicable standard for evaluating Plaintiff's complaints (Tr. 20). Next, the ALJ acknowledged that Plaintiff had "some medically determinable impairments which could reasonably be expected to give rise to some of her subjective complaints," but he found that the "nature, magnitude and intensity" of Plaintiff's alleged symptoms were not supported by the record (*id.*). The ALJ then provided several reasons for drawing this conclusion.

First, the ALJ stated that Plaintiff's complaints were inconsistent with the objective medical evidence. Although not determinative of a claimant's credibility alone, an ALJ is permitted to consider the objective medical signs and laboratory findings, or lack thereof, when determining a claimant's credibility. *See* 20 C.F.R. § 416.929(c). In doing so here, the ALJ noted that the medical records indicated no muscle atrophy or other clinical signs that would normally be expected if Plaintiff's pain precluded the use of her muscles (Tr. 20). Indeed, a physical examination in February 2004 revealed that Plaintiff had normal muscle size and strength, a full range of motion in all extremities, negative straight leg raising test, normal deep tendon reflexes, an ability to bend back 90 degrees, and "no significant abnormalities of the musculoskeletal system" (Tr. 203).[10] Moreover, Plaintiff could walk and sit without difficulty, and she had good balance, grip strength, and manual dexterity (Tr. 203). Additionally, during a psychological examination in March 2004, Dr. Hord noted that while Plaintiff had some difficulty getting up from a chair and sitting in a chair,

---

[10] Although not noted by the ALJ, Plaintiff's physical examination also revealed "calluses on both hands" (Tr. 203), a condition normally associated with a greater amount of physical activity than that alleged by Plaintiff. Indeed, the callouses are consistent with Plaintiff's report to Dr. Hord in March 2004 and Dr. Howell in October 2004 that she was raking yards, and inconsistent with a disabling level of pain (Tr. 311).

Case No. 5:07cv84/RS/EMT

her posture and gait were otherwise unremarkable (Tr. 215).  Finally, Dr. Lewandowski, while noting that Plaintiff appeared comfortable during a physical examination and that her physical examination was essentially unremarkable, stated that "without additional testing it is difficult to judge if this patient has real problems" — suggesting Plaintiff's symptoms were not as severe as she alleged (Tr. 203).  *See* Vuxta v. Comm'r. of Soc. Security, 194 Fed. Appx. 874, 877 (11th Cir. 2006) (symptom exaggeration is a relevant consideration in weighing the opinions of different medical experts);[11] *see also* Jones v. Callahan, 122 F.3d 1148, 1152 (8th Cir. 1997) (exaggeration of symptoms is a factor to be weighed in evaluating subjective complaints of pain).

Second, the ALJ noted Plaintiff's testimony that the primary problem preventing her from working is her breathing difficulty, yet Plaintiff continued to smoke against the repeated advice of her physician (Tr. 21).  An ALJ may properly consider noncompliance with medical advice in evaluating a claimant's credibility.  *See* Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) ("[T]he ALJ's consideration of Ellison's noncompliance as a factor in discrediting Ellison's allegations of disability is adequately supported . . ."); *see also* Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability).  Plaintiff has offered no reason for failing to follow her doctor's advice.  In fact, she testified at the hearing that she felt a positive difference in her breathing after she reduced the number of cigarettes she smoked (Tr. 413).  Moreover, the record demonstrates that Plaintiff's respiratory problems were, in large part, related to her smoking habit (*see, e.g.*, Tr. 293, 297, 301, 310, 314, 363, 378).  Thus, had she followed her doctor's advice, the record certainly suggests her condition would have improved.  *See* Dawkins, 848 F.2d at 1213 ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.") (citation omitted).  Furthermore, the record contains some evidence suggesting that Plaintiff refused certain treatment or medication due to a lack of funds.  However, smoking cessation costs nothing, and indeed, if Plaintiff would have quit smoking she would have had more money to put toward treatment.  *See* Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (ALJ properly considered that claimant did not choose to forgo smoking three packs of cigarettes a day to help finance pain

---

[11]The undersigned cites Vuxta, an unpublished case, only as persuasive authority and recognizes that the opinion is not considered binding precedent.  *See* U.S. Ct. of App. 11th Cir. Rule 36–2, 28 U.S.C.A.

Case No. 5:07cv84/RS/EMT

medication). As the ALJ properly observed, Plaintiff's continued smoking "begs the question of how serious her symptoms are" (Tr. 21).

Third, the ALJ observed that Plaintiff had a positive response to medication (*id.*). The record supports the ALJ's observation (*see, e.g.,* Tr. 311 (Plaintiff noted to be doing "better"), Tr. 337 (Plaintiff noted to have no shortness of breath), Tr. 342 (Plaintiff noted to be breathing better and moving "fairly well," and she reported "doing fairly well on her current medications"), Tr. 385 (Plaintiff reported breathing better with Advair and Spiriva)).

Finally, the ALJ noted that Plaintiff's activities of daily living were inconsistent with a disabling degree of pain (Tr. 22). An ALJ may properly consider daily activities when evaluating subjective complaints of disabling pain and other symptoms. *See* Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 416.929(c)(3)(i). Plaintiff, however, contends the ALJ erred in considering her activities because he noted that Plaintiff "has reported going to church . . . and visiting with friends," but Plaintiff specifically testified that she did not go to church and did not visit friends (*see* Tr. 19, 421; Doc. 15 at 21). Plaintiff is correct that the ALJ's specific statement is not supported by the record. However, misstatements by an ALJ can constitute harmless error. *See* Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (misstatements harmless where ALJ applied correct legal standard despite the first misstatement, and the second misstatement was irrelevant); East v. Barnhart, 197 Fed. Appx. 899, 901 n.3 (11th Cir. 2006) (failure to mention psychologist's report harmless where findings in report were consistent with ALJ's ultimate determination); Pichette v. Barnhart, 185 Fed. Appx. 855, 856 (11th Cir. 2006) (ALJ's erroneous statements found to be harmless where ALJ applied proper legal standard).

Here, the undersigned concludes that the ALJ's misstatement was a harmless error, as reconsideration of Plaintiff's reported activities of daily living would not change the ALJ's ultimate conclusion in this case. In addition to his misstatement, the ALJ also noted that Plaintiff drove, fished off a dock, shopped a little, and was able to cook "some" (Tr. 22), and evidence of each of these activities exists in the record (*see* Tr. 418, 419, 420). Additionally, the record reveals that Plaintiff raked yards, had callouses on her hands, walked in the yard, did laundry once a week, swept with some limitations, and visited relatives, but not "too often" (Tr. 203, 311, 417, 419, 421). Although Plaintiff's description of her activities show some limitations, the ALJ is not required to

believe all of a claimant's assertions concerning her activities. *See* Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996). Indeed, the ALJ acknowledged that Plaintiff had some limitations in her activities of daily living (Tr. 22), but nevertheless properly considered the activities she was capable of performing in further discounting her subjective complaints of pain. Thus, the ALJ did not err.

In conclusion, because the ALJ articulated the inconsistencies on which he relied in discrediting Plaintiff's testimony regarding her subjective complaints, and because the ALJ's credibility finding is supported by substantial evidence on the record as a whole, the ALJ's credibility finding should be affirmed. *See* Foote, 67 F.3d at 1561–62. A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court. *See id.*

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 10th day of April 2008.

>   /s/ *Elizabeth M. Timothy*
>   **ELIZABETH M. TIMOTHY**
>   **UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**